UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE HAYES, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ENPHASE ENERGY, INC., et al.,<br><br>Defendants. | Case No. 24-cv-04249-JD<br><br>**ORDER RE LEAD PLAINTIFF AND LEAD COUNSEL** |

This is a putative shareholder class action alleging securities fraud by defendant Enphase Energy, Inc. and its officers. Dkt. No. 1. From an initial group of six, three shareholders now vie for the role of lead plaintiff and request that their counsel be appointed as lead counsel. *See* Dkt. No. 17 (motion of Daniel C. Smith for appointment as lead plaintiff and approval of counsel); Dkt. No. 24 (motion of Lon D. Praytor); Dkt. No. 32 (motion of Andrey Ponomarchuk).[1]

## I.   LEAD PLAINTIFF

### A.   Step One

The Court has discussed in other orders the three-step process for appointing a lead plaintiff under the Private Securities Litigation Reform Act (PSLRA), 15 U.S.C. § 78u-4(a)(3)(B). *See In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d. 833 (N.D. Cal. 2019). The first step is for the plaintiff in the first-filed action to "publiciz[e] the pendency of the action, the claims made and the purported class period" in "a widely circulated national business-oriented publication or wire service." *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) (citing 15 U.S.C. § 78u-4(a)(3)(A)).

---

[1] The remaining three movants have either withdrawn their application or filed a notice recognizing that other movants have a greater financial interest in the litigation. Dkt. Nos. 43, 46, 47.

1   The notice must "also state that 'any member of the purported class may move the court to serve
2   as lead plaintiff.'" *Id*.  The parties agree this step was adequately completed here.  *See* Dkt.
3   No. 18-1; Dkt. No. 25-1; Dkt. No. 35-1.

### B.     Steps Two and Three

In the next two steps, the Court considers "potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical." *Cavanaugh*, 306 F.3d at 732.  In step two, the Court determines presumptive lead plaintiff status relying on the "presumptive lead plaintiff's complaint and sworn certification." *Id*. at 730.  In step three, the other plaintiffs have "an opportunity to rebut the presumptive lead plaintiff's showing" by "present[ing] evidence that disputes the lead plaintiff's prima facie showing of typicality and adequacy." *Id*.

The presumptive lead plaintiff is "the one who 'has the largest financial interest in the relief sought by the class' and 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.'" *Id*. at 729-30 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)).  For the first part of that determination, the Court "must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *Id*.  There are no hard and fast rules for doing so, and the Court "may select accounting methods that are both rational and consistently applied." *Id*. at 730 n.4.

Here, the Court finds that Lon D. Praytor is the movant who has the greatest financial stake and the most to gain from this lawsuit.  That is the obvious conclusion from the movants' initial filings.  Movant Smith claimed a LIFO (last-in-first-out) loss of $144,972.85.  Dkt. No. 41-1.  Praytor claimed a LIFO loss of $340,462.86.  Dkt. No. 25-3 at ECF p. 8.  And Ponomarchuk claimed a LIFO loss of $282,176.13.  Dkt. No. 35-3.

Smith's and Ponomarchuk's belated attempts to overturn this state of affairs are without merit.  Smith initially argued only the amount of his LIFO loss in his opening brief, which turned out to be less than he initially believed.  Smith's motion claimed a loss of $326,297.97, *see* Dkt. No. 17 at 5, but he later corrected this amount to $144,972.85 in an "errata," citing an "inadvertent data entry error."  Dkt. No. 41.  Only then did he switch tacks and ask the Court to use a "net share

1  methodology" instead. Dkt. No. 48 at 2. The Court declines to do so. Not only is the new
2  methodology different from that presented in Smith's original motion, in our circuit, the "weight
3  of authority puts the most emphasis on the competing movants' estimated losses[] using a 'last in,
4  first out['] (LIFO) methodology." *Nicolow v. Hewlett Packard Co.*, No. 12-05980 CRB, 2013 WL
5  792642, at *4 (N.D. Cal. Mar. 4, 2013).

The same is true for Ponomarchuk's belated appeal to the Court to look only at "recoverable losses" under *Dura Pharmaceuticals v. Broudo*, 544 U.S. 336 (2005). Dkt. No. 50 at 5-6. Ponomarchuk, too, made no mention of *Dura*-adjusted losses in his opening motion, *see* Dkt. No. 32, and raised the argument only in his opposition. *See* Dkt. No. 50. In addition, Ponomarchuk has not substantively answered Praytor's challenge that he has failed to apply the reasoning of *Dura* to his own loss calculations. *See* Dkt. No. 53 at 3-4. Ponomarchuk's trading records show that he purchased 3,635 shares of Enphase prior to the class period and sold those 3,635 shares during the class period, *see* Dkt. No. 35-3, but Ponomarchuk does not provide the purchase price information for those shares, nor make any effort to "offset [his] claimed loss with gains for [Enphase] securities purchased *before* the Class Period and sold *during* the Class Period." *Ferreira v. Funko, Inc.*, No. 2:20-cv-02319-VAP-PJWx, 2020 WL 3246328, at *7 (C.D. Cal. June 11, 2020) (emphasis in original; citing cases). Such an offset would be needed because, as Praytor correctly notes, Ponomarchuk's pre-class period purchases occurred "when there was no price inflation," and the sales were made during the class period "during the period of price inflation." Dkt. No. 53 at 3. Ponomarchuk's *Dura*-adjusted loss argument is further undercut by his acknowledgement of the primacy of the LIFO approach in our circuit. *See* Dkt. No. 54 at 4.

For all of these reasons, the Court compares the three movants' LIFO losses and finds that Praytor has suffered the greatest loss, in the amount of $340,462.86. Praytor has additionally made a *prima facie* showing that he "satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Cavanaugh*, 306 F.3d at 730; *see* Dkt. No. 24 at 6-7. Consequently, Praytor is the "presumptively most adequate plaintiff." *Cavanaugh*, 306 F.3d at 730.

Under step three of the inquiry, the other plaintiffs have "an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy

requirements." *Id*. (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)).  This step requires evidence.  *See id*. at 730-31; *In re SVB Fin. Grp. Sec. Litig.*, No. 3:23-cv-01097-JD, 2023 WL 8367938, at *2 (N.D. Cal. Nov. 30, 2023) ("Competing movants must point to evidence of inadequacy.") (citing *In re Mersho*, 6 F.4th 891, 901 (9th Cir. 2021)).

Both Smith and Ponomarchuk have attacked Praytor's competency under Rule 23(a) on the basis that he engaged in day trading and short selling.  *See* Dkt. No. 48 at 5-6; Dkt. No. 50 at 11-12.  But neither plaintiff pointed to any controlling law that requires Praytor's disqualification on this basis, nor did they come forward with any evidence of Praytor's actual trading practices that disprove his adequacy or typicality at this stage of the case.  As the Court noted at the hearing, Praytor's adequacy and typicality may be revisited if the facts show that he engaged in highly atypical trading practices, such as the use of algorithms.  *See* Dkt. No. 66 at 30-31.  On the current record, however, the Court concludes that the PSLRA calls for Praytor's appointment as lead plaintiff.

## II.   LEAD COUNSEL

Under the PSLRA, the Court must also appoint lead counsel.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.").  "While the appointment of counsel is made subject to the approval of the court, the Reform Act clearly leaves the choice of class counsel in the hands of the lead plaintiff."  *Cavanaugh*, 306 F.3d at 734 (citations omitted).

Here, Praytor has selected attorney Charles H. Linehan of Glancy Prongay & Murray LLP, and the Court sees no reason to disagree with his selection.  Attorney Linehan is appointed lead counsel for the putative class in this securities fraud action.

## III.   CASE SCHEDULE AND NEXT STEPS

The parties are directed to meet and confer to set a schedule for the lead plaintiff's filing of an amended complaint (if desired) and the defendants' response to the complaint.  A joint proposed schedule is due by April 16, 2025.

Pursuant to the PSLRA and the Federal Rules of Civil Procedure -- as well as for the sake of clarity and efficient case management -- lead plaintiff is directed to set out in chart form his

securities fraud allegations under the following headings on a numbered, statement-by-statement basis: (1) the speaker(s), date(s) and medium; (2) the false and misleading statements; (3) the reasons why the statements were false and misleading when made; and (4) the facts giving rise to a strong inference of scienter.  The chart may be attached to or contained in the amended complaint, and will be deemed to be a part of the complaint.  If lead plaintiff elects to rest on the original complaint, Dkt. No. 1, the chart may be filed as a separate document on the ECF docket and the parties must propose a deadline for its filing.

**IT IS SO ORDERED.**

Dated:  March 31, 2025

JAMES DONATO
United States District Judge