Charles H. Linehan (SBN 307439)
  *clinehan@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Lead Plaintiff Lon D. Praytor and
Lead Counsel for the Class*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE HAYES, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ENPHASE ENERGY, INC., BADRINARAYANAN KOTHANDARAMAN and MANDY YANG,<br><br>Defendants. | Case No. 3:24-cv-04249-JD<br><br>**LEAD PLAINTIFF LON D. PRAYTOR'S RESPONSE TO THE MOTION OF ANDREY PONOMARCHUK FOR LEAVE OF COURT TO FILE MOTION FOR RECONSIDERATION OF ORDER APPOINTING LEAD PLAINTIFF AND APPROVING LEAD COUNSEL (DKT. NO. 69)** |

PRAYTOR'S RESPONSE TO PONOMARCHUK'S MOTION FOR LEAVE
Case No. 3:24-cv-04249-JD

Lead Plaintiff Lon D. Praytor ("Praytor") submits this memorandum of law in response to the Motion of Andrey Ponomarchuk for Leave of Court to File Motion for Reconsideration of Order Appointing Lead Plaintiff and Approving Lead Counsel (Dkt. No. 71, "Motion for Leave" or "MFL"). The Motion for Leave should be denied because the Order re Lead Plaintiff and Lead Counsel (Dkt. No. 69, the "Order") is consistent with the relevant facts and law, and Ponomarchuk has not demonstrated a manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court.

## I.    PRELIMINARY STATEMENT AND STANDARD

For leave to be granted, Civil Local Rule 7-9 ("Rule 7-9") requires that Ponomarchuk demonstrate one of three bases for leave: (1) a material difference in fact or law exists from that which was presented to the Court before entry of the Order; (2) the emergence of new material facts or a change of law; or (3) "[a] manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." *Id*. Ponomarchuk's Motion for Leave relies entirely on the third basis: a purported "failure by the Court to consider material facts or dispositive legal arguments."

Motions for leave to file a motion for reconsideration are "rarely granted" and "disfavored" because "reconsideration is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *Leventhal v. Chegg, Inc.*, 2024 WL 3447516, at *1 (N.D. Cal. July 17, 2024) (citations omitted). Moreover, "[w]hether or not to grant reconsideration is committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003).

While Ponomarchuk claims in his Motion for Leave that the Court failed to consider material facts and dispositive legal arguments, Ponomarchuk is, in reality, repeating arguments from his earlier briefing that the Court rejected in the hopes that the Court will change its mind. This is not permitted. *See* Rule 7-9(c) ("No motion for leave to file a motion for reconsideration may repeat any oral or written argument" previously made); *Chegg*, 2024 WL 3447516, at *1 ("[A] motion for reconsideration is not a vehicle permitting the unsuccessful party to reiterate

arguments previously presented.") (citation omitted).  Accordingly, and as further explained *infra*, Ponomarchuk's Motion for Leave should be denied in its entirety.

## II.   THE COURT DID NOT ERR BY CONCLUDING THAT PRAYTOR HAS THE LARGEST FINANCIAL INTEREST BECAUSE PRAYTOR HAS THE LARGEST LIFO LOSS

All of Ponomarchuk's challenges to the Order regard the determination of the Court that Praytor has the largest financial interest pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii). However, the Order is unassailable on this point because the Court applied the most well-accepted measure of financial interest (LIFO loss). Specifically, the Court reasoned:

> Here, the Court finds that Lon D. Praytor is the movant who has the greatest financial stake and the most to gain from this lawsuit. That is the obvious conclusion from the movants' initial filings. Movant Smith claimed a LIFO (last-in-first-out) loss of $144,972.85. Dkt. No. 41-1. Praytor claimed a LIFO loss of $340,462.86. Dkt. No. 25-3 at ECF p. 8. And Ponomarchuk claimed a LIFO loss of $282,176.13. Dkt. No. 35-3.

*See* Order at 2. In fact, Ponomarchuk does not contest the fact that Praytor has the largest LIFO loss.

Moreover, LIFO loss is the most well-accepted and consistently applied method of comparing financial interests in this District and Circuit. *See Weston v. DocuSign, Inc.*, 2022 WL 1301770, at *2 (N.D. Cal. Apr. 18, 2022) ("Most courts within this district use the LIFO method to calculate estimated losses."); *Scheller v. Nutanix, Inc.*, 2021 WL 2410832, at *4 (N.D. Cal. June 10, 2021) ("Most courts in this district use the LIFO method to calculate a movant's estimated losses.") (collecting cases); *Twitchell v. Enovix Corp.*, 2023 WL 3170044, at *9 (N.D. Cal. Apr. 28, 2023) (finding "last-in-first-out (LIFO) calculation . . . is often the preferred method of calculating financial losses," and applying "the LIFO calculations the movants presented in their opening briefs"); Order at 3 (Ponomarchuk acknowledged "the primacy of the LIFO approach in our [C]ircuit").

The Ninth Circuit, moreover, broadly permits use of any accounting method that is "both rational and consistently applied." *In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002) (quoted in Order at 2). The LIFO method is rational and consistently applied. *See DocuSign*, 2022 WL 1301770, at *2 ("Mindful of the Ninth Circuit's desire for consistent application, I will [use the LIFO method].").

While Ponomarchuk repeatedly provides quotes in his Motion for Leave stating that his proposed alternative *Dura*-adjusted loss is the "gold standard" measure of financial interest (*see* MFL at 1, 2, 5, 6), the quotes calling it the "gold standard" come from his own reply memorandum (Dkt. No. 54)—he is quoting himself. Counsel for Praytor was not able to locate authority identifying a "gold standard," but, as illustrated above, LIFO loss is the most well-accepted measure of financial interest.

Accordingly, the Court did not err in determining that Praytor has the largest financial interest on the basis that he has the largest LIFO loss. On this basis alone the Court can and should deny the Motion for Leave.

## III.    THE COURT DID NOT ERR BY REJECTING PONOMARCHUK'S BELATED APPEAL TO THE COURT TO LOOK ONLY TO HIS PARTICULAR FORMULATION OF *DURA*-ADJUSTED LOSS TO MEASURE FINANCIAL INTEREST

In the Order, the Court properly rejected "Ponomarchuk's belated appeal to the Court to look only at 'recoverable losses' under *Dura*." Order at 3. As an initial matter, rejecting Ponomarchuk's alternative method was not error as it is within the Court's discretion to choose to use the rational and consistently applied LIFO method instead. Moreover, other courts routinely reject similar gamesmanship. *See, e.g.*, *Enovix*, 2023 WL 3170044, at *9 (electing to use the "LIFO calculations the movants presented in their opening briefs" rather than "recoverable *Dura* losses" and noting "[o]ther courts in this district have looked with disapproval on movants who present different loss calculations in their subsequent briefing from what they presented in their motions").

Ponomarchuk argues, however, that "the Court erred in finding that Ponomarchuk only 'belatedly' sought to apply *Dura* to calculate the financial interest." MFL at 1. Specifically, Ponomarchuk points to the loss chart which he submitted attached to a declaration in support of his lead plaintiff motion, in which he labels his loss calculation "FIFO/LIFO/DURA Losses" in small font in the upper left hand corner of the chart. *See* MFL at 2, 4. On this basis, Ponomarchuk claims his application of *Dura* was not "belated." However, Ponomarchuk misapprehends the Court's reasoning. The belated shift that the Court rejected was Ponomarchuk's proposal to "look *only* at 'recoverable losses' under *Dura*" (Order at 3 (emphasis added)) to the exclusion of LIFO loss, when Ponomarchuk had previously endorsed LIFO loss in his initial motion. As such, the reasoning in the Order is accurate and not in error.

Ponomarchuk also alleges error in the Court's finding that "Ponomarchuk . . . made no mention of *Dura*-adjusted losses in his opening motion, *see* Dkt. No. 32 . . . ." Order at 3. Here too, Ponomarchuk points to his loss chart in which he labels his loss calculation "FIFO/LIFO/DURA Losses" in small font in the upper left hand corner of the chart. *See* MFL at 2, 4. However, Ponomarchuk's argument amounts to nitpicking ambiguity in the Order's wording—and is not a substantive challenge. The Court is correct that Ponomarchuk's ***motion*** at Docket Number 32, which the Court cites, does not mention the word "Dura" much less cite to *Dura*, or explain how Ponomarchuk believes *Dura* should inform the loss calculation. As such, it is accurate that "Ponomarchuk . . . made no mention of *Dura*-adjusted losses in his opening motion" at Dkt. No. 32. *See* Order at 3. In fact, Ponomarchuk did not offer an explanation of how *Dura* should inform the loss calculations until his opposition memorandum—after having seen the other movants' trades, which is the type of gamesmanship courts routinely reject. *See, e.g.*, *Bodri v. Gopro, Inc.*, 2016 WL 1718217, at *3 (N.D. Cal. Apr. 28, 2016) ("Only after the parties filed their opening briefs, and the parties were made aware of how their respective motions would fare under [LIFO], did the Majesty Palms Group argue that the more appropriate measure of greatest financial stake was the 'retained shares' methodology."). Ponomarchuk's gamesmanship is further evident by the fact that his proffered application of *Dura* did not account for Ponomarchuk's gains on stock he purchased prior to the class period and sold during the class period. *See* Order at 3

(Ponomarchuk "failed to apply the reasoning of *Dura* to his own loss calculations"). As such, rejecting Ponomarchuk's belated *Dura*-adjusted loss calculation was not error.

Moreover, even if the Court did err regarding the timing of Ponomarchuk's introduction of his preferred version of a *Dura*-adjusted loss (the Court did not err), the Court further rejected Ponomarchuk's *Dura* calculation on two independent bases—namely "the primacy of the LIFO approach" and that Ponomarchuk "failed to apply the reasoning of *Dura* to his own loss calculations." *See* Order at 3. As such, Ponomarchuk's arguments regarding the timing, even if accepted, would not change the result: LIFO is a proper method, Praytor has the largest LIFO loss, and therefore the largest financial interest.

## IV.    THE ORDER IS CONSISTENT WITH *ZOOM*

Ponomarchuk argues that "the Order is inconsistent with this Court's findings in *Zoom* where the Court did apply *Dura*." MFL at 6 (citing *In re Zoom Sec. Litig.*, 2021 WL 1375854 (N.D. Cal. Apr. 12, 2021)).

Ponomarchuk is incorrect—*Zoom* did not apply *Dura* in the way Ponomarchuk asks the Court to apply *Dura* here. In *Zoom*, the Court relied on *Dura* to reason that the 90-day average price following a partial corrective disclosure should be used to calculate a movant's loss who sold shares after the partial disclosure, rather than the 90-day average price following the final corrective disclosure. *See Zoom*, 2021 WL 1375854, at *1–*2 ("[T]here is no reasonable question about the use of the July 2019 partial corrective disclosure to estimate Pham's compensable financial losses . . . ."); *see also* 15 U.S.C § 78u-4(e) (Limitation on Damages, discussing application of the 90-day average price). Here, there is no dispute as to what 90-day average price should be applied to calculate the movants' losses. As such, *Zoom* is inapposite , and there is no inconsistency between *Zoom* and the Order.

## V.    THE COURT DID NOT ERR IN HOLDING THAT THE LOGIC OF *DURA* DICTATES THAT PONOMARCHUK HAS GAINS ON HIS CLASS PERIOD SALES THAT MATCH TO PRE-CLASS PERIOD PURCHASES

Ponomarchuk argues that "this Court erred in accepting" the argument that the logic of *Dura* would require that Ponomarchuk "back out gains from his initial Class Period sales" that

matched to his pre-class period purchases. *See* MFL at 7. Ponomarchuk added that "[t]he Court failed to consider that . . . this argument couldn't be applied to these facts under the relevant caselaw." *Id.* Ponomarchuk has not identified an error.

As an initial matter, this Court is not bound by other district court orders—so deviating from other district court caselaw is not error. Moreover, the Order is consistent with other district court cases. *See, e.g.*, *Perlmutter v. Intuitive Surgical, Inc.*, 2011 WL 566814, at *9 (N.D. Cal. Feb. 15, 2011):

> [W]hen Marcus purchased Intuitive stock prior to the Class Period, he purchased it at fair market value. When he sold it during the Class Period, however, he sold it at fraudulently inflated prices. As a result, instead of being injured by the fraud on these sales, Marcus actually benefitted from the fraud. . . . Even if Marcus lost money in all of his Intuitive stock transactions, this amount was reduced by his Class Period sales when the stock prices were inflated.

*See also Ferreira v. Funko, Inc.*, 2020 WL 3246328, at *7 (C.D. Cal. June 11, 2020) ("The greatest error is likely Gerber Kawasaki's failure to offset its claimed loss with gains for Funko securities purchased before the Class Period and sold during the Class Period."). Ponomarchuk does not challenge or even mention *Intuitive Surgical* in his Motion for Leave, even though Praytor cited *Intuitive Surgical* in his reply memorandum. *See* Dkt. No. 53 at 4. While Ponomarchuk notes that the movant in *Funko* was a "net seller"—meaning he sold more shares during the class period than he purchased—that fact does not relieve Ponomarchuk from the reasoning in *Funko*. That the *Funko* movant was a net seller amplified the court's concerns regarding his gains on class period sales of pre-class period purchases. However, *Funko* does not stand for the proposition that only net sellers must offset their losses with gains from class period sales of pre-class period purchases. Accordingly, the Court's Order is consistent with the reasoning of *Funko*, and properly held that Ponomarchuk must offset his loss. *See* Order at 3.

Ponomarchuk's authority, which he offers in contrast to *Funko*, is not persuasive. Ponomarchuk cites to *Lewis v. CytoDyn, Inc.*, 2021 WL 3709291, at *4 (W.D. Wash. Aug. 19, 2021) to support the proposition that "[w]hen using LIFO . . . courts do not typically offset the loss

PRAYTOR'S RESPONSE TO PONOMARCHUK'S MOTION FOR LEAVE
Case No. 3:24-cv-04249-JD

with pre-class period purchases and sales." *See* MFL at 7, 8 n.6. There are at least two problems with Ponomarchuk's appeal to *CytoDyn*. First, *CytoDyn* is inapposite because it is using a standard LIFO loss calculation without applying *Dura*—whereas the Order here reasoned specifically that if *Dura* is applied, then gains on class period sales of pre-class period purchases should offset losses. Second, *CytoDyn* uses the qualifier "typically"—stating that "courts do not **typically** offset the loss with pre-class period purchases and sales" (emphasis added)—but acknowledges that other courts have offset such losses (specifically noting *Funko*). *See CytoDyn*, 2021 WL 3709291, at *4. As such, it is not error for this Court to require that Ponomarchuk offset his losses with gains from class period sales of pre-class period purchases consistent with *Funko*.

## VI. THE COURT DID NOT ERR BY HOLDING THAT PONOMARCHUK FAILED TO SUBMIT TIMELY EVIDENCE OF HIS *DURA*-ADJUSTED LOSS, ACCOUNTING FOR RELEVANT GAINS

Ponomarchuk argues that the Court erred because it "failed to consider at the hearing" that Ponomarchuk's counsel claimed at the hearing that his loss, including offsetting gains, is "approximately $247,000." MFL at 8. This is not error because the Court is not required to accept new arguments or new evidence at the hearing. *See Resh, Inc. v. Conrad*, 2025 WL 835031, at *2 (N.D. Cal. Mar. 17, 2025) ("[A]ny argument raised for the first time at the hearing is improper."); *Alvarado v. FedEx Corp.*, 2006 WL 644875, at *1 (N.D. Cal. Mar. 13, 2006) ("The Court will not consider arguments and evidence raised for the first time at the hearing."); *Dux Cap. Mgmt. v. Chen*, 2004 WL 1936309, at *4 n.2 (N.D. Cal. Aug. 31, 2004) (rejecting argument made "[f]or the first time at the hearing"). Rejecting Ponomarchuk's new argument at the hearing is particularly justified here because lead plaintiff motions, unlike typical motions in other circumstances, afford **three** opportunities to submit arguments—in the motion, opposition, and reply (Dkt. Nos. 32, 50, 54). Ponomarchuk did not submit his argument or evidence regarding his pre-class period purchases in the briefing and thereby forfeited his opportunity. Accordingly, it was not error for the Court to disregard Ponomarchuk's counsel's un-evidenced claim at the hearing that Ponomarchuk had a loss of "approximately $247,000."

PRAYTOR'S RESPONSE TO PONOMARCHUK'S MOTION FOR LEAVE
Case No. 3:24-cv-04249-JD                                                                                    7

## VII.    CONCLUSION

Ponomarchuk has failed to demonstrate "[a] manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court" prior to the Order. *See* Rule 7-9(b)(3). As such, Ponomarchuk's Motion for Leave should be denied in its entirety.

DATED:  May 15, 2025

Respectfully submitted,

**GLANCY PRONGAY & MURRAY LLP**

By:    */s/ Charles H. Linehan*

Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email:  clinehan@glancylaw.com

*Counsel for Lead Plaintiff Lon D. Praytor and Lead Counsel for the Class*

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Additional Counsel*

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned, say:

I am not a party to the above case and am over eighteen years old. On May 15, 2025, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Northern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 15, 2025, at Los Angeles, California.

*/s/ Charles H. Linehan*
Charles H. Linehan

PRAYTOR'S RESPONSE TO PONOMARCHUK'S MOTION FOR LEAVE
Case No. 3:24-cv-04249-JD