LATHAM & WATKINS LLP
Colleen C. Smith (Bar No. 231216)
  *colleen.smith@lw.com*
Katherine E. Bruce (Bar No. 361220)
  *kathy.bruce@lw.com*
Anastasia Pyrinis (Bar No. 352395)
  *anastasia.pyrinis@lw.com*
12670 High Bluff Drive
San Diego, CA 92130
Telephone: +1.858.523.5400

Daniel R. Gherardi (Bar No. 317771)
  *daniel.gherardi@lw.com*
140 Scott Drive
Menlo Park, CA 94025
Telephone: +1.650.328.4600

Thomas J. Giblin (*pro hac vice*)
  *thomas.giblin@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1 212.906.1200

*Attorneys for Defendants Enphase Energy, Inc. and*
*Badrinarayanan Kothandaraman*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| WAYNE HAYES, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ENPHASE ENERGY, INC., BADRINARAYANAN KOTHANDARAMAN and MANDY YANG,<br><br>Defendants. | Case No. 3:24-cv-04249-JD<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS LEAD PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>Hearing:   November 6, 2025<br>Time:       10:00 a.m.<br>Location: Courtroom 11, 19th Floor<br><br>Hon. James Donato |

# GLOSSARY

| Term | Definition |
|---|---|
| ¶ | Paragraph of the Complaint |
| AC or Complaint | Corrected Amended Class Action Complaint (Dkt. No. 78, cited herein as "¶ __") |
| CEO | Chief Executive Officer |
| Class Period | February 7, 2023 to April 25, 2023 |
| CPUC | California Public Utility Commission |
| CW(s) | Confidential witness(es), which are referenced as "Former Employee(s)" or "FE" in the Complaint |
| Defendants | Enphase and Badrinarayanan Kothandaraman |
| Enphase or the Company | Enphase Energy, Inc. |
| Ex. | Exhibits attached to the Declaration of Daniel R. Gherardi in Support of Defendants' Motion to Dismiss |
| Motion or Mot. | Motion to Dismiss Lead Plaintiff's Amended Class Action Complaint for Violations of the Federal Securities Laws (Dkt. No. 79). |
| NEM | Net Energy Metering |
| Opposition or Opp. | Lead Plaintiff's Opposition to Defendants' Motion to Dismiss (Dkt. No. 81) |
| Plaintiff | Lead Plaintiff Lon D. Praytor |
| PSLRA | Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 *et seq.* |
| PPA | Purchase Power Agreement, "a financial agreement where a developer/installer arranges for the design, permitting, financing and installation of a solar energy system on a customer's property at little or no cost. The developer/installer sells the power generated to the host customer at a fixed rate that is typically lower than the local utility's retail rate. In addition to the income from the electricity sales, the developer/installer also receives any tax credits and other incentives generated from the system." ¶ 27 |
| Q1, Q2, Q3, Q4 | Enphase's first fiscal quarter (Jan. 1-Mar. 31), second fiscal quarter (Apr. 1-June 30), third fiscal quarter (July 1-Sep. 30), fourth fiscal quarter (Oct. 1-Dec. 31) |
| SEC | U.S. Securities and Exchange Commission |

**TABLE OF CONTENTS**

Page

I.       INTRODUCTION ............................................................................................................ 1

II.      ARGUMENT ................................................................................................................... 1

   A.    Plaintiff Fails to Plead Falsity for Either Challenged Statement ........................... 1

       1.    The Demand Pull-Forward Statement Was Not False or
             Misleading.................................................................................................... 1

       2.    The Installer Base Statement Was Not False or Misleading....................... 4

   B.    Plaintiff Fails to Plead a Strong Inference of Scienter............................................ 6

       1.    Plaintiff Fails to Allege Any Motive ............................................................ 6

       2.    Plaintiff Does Not Adequately Allege Fraudulent Intent ........................... 6

       3.    The Nonfraudulent Inference Is More Compelling ..................................... 9

   C.    Plaintiff Does Not Adequately Allege Loss Causation......................................... 10

III.     CONCLUSION.............................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Applestein v. Medivation, Inc.*,
  861 F. Supp. 2d 1030 (N.D. Cal. 2012) ................................................................................. 2

*Baker v. SeaWorld Entm't, Inc.*,
  423 F. Supp. 3d 878 (S.D. Cal. 2019) .................................................................................. 10

*Bolling v. Dendreon Corp.*,
  2014 WL 2533323 (W.D. Wash. June 5, 2014) ....................................................................... 8

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  856 F.3d 605 (9th Cir. 2017) .................................................................................................. 9

*City of Hollywood Firefighters Pension Fund v. Atlassian Corp.*,
  2024 WL 235183 (N.D. Cal. Jan. 22, 2024) ...................................................................... 9, 10

*Curry v. Yelp Inc.*,
  2015 WL 1849037 (N.D. Cal. Apr. 21, 2015) ........................................................................ 8

*Dolly v. GitLab Inc.*,
  2025 WL 2372965 (N.D. Cal. Aug. 14, 2025) ........................................................... 3, 4, 5, 10

*E. Ohman J:or Fonder AB v. NVIDIA Corp.*,
  81 F.4th 918 (9th Cir. 2023) ................................................................................................... 8

*Glaser v. The9, Ltd.*,
  772 F. Supp. 2d 573 (S.D.N.Y. 2011) ..................................................................................... 7

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
  63 F.4th 747 (9th Cir. 2023) ................................................................................................... 6

*In re AnaptysBio, Inc.*,
  2021 WL 4267413 (S.D. Cal. Sept. 20, 2021) ........................................................................ 7

*In re Apple Inc. Sec. Litig.*,
  2020 WL 6482014 (N.D. Cal. Nov. 4, 2020) .......................................................................... 9

*In re Cutera Sec. Litig.*,
  610 F.3d 1103 (2010) .............................................................................................................. 6

*In re Daou Sys., Inc.*,
  411 F.3d 1006 (9th Cir. 2005) ............................................................................................... 3

*In re Fastly, Inc. Sec. Litig.*,
  2021 WL 5494249 (N.D. Cal. Nov. 23, 2021) ........................................................................ 8

*In re Foundry Networks, Inc.*,
  2003 WL 23211577 (N.D. Cal. Feb. 14, 2003) ........................................................................ 5

*In re Palo Alto Networks, Inc. Sec. Litig.*,
  2025 WL 1093247 (April 11, 2025) ......................................................................................... 3

*In re Pivotal Sec. Litig.*,
  2020 WL 4193384 (N.D. Cal. July 21, 2020) .......................................................................... 2

*In re Solarcity Corp. Sec. Litig.*,
  274 F. Supp. 3d 972 (N.D. Cal. 2017) ..................................................................................... 7

*In re Wet Seal, Inc. Sec. Litig.*,
  518 F. Supp. 2d 1148 (C.D. Cal. 2007) ................................................................................... 8

*In re Zillow Grp., Inc. Sec. Litig.*,
  2019 WL 1755293 (W.D. Wash. Apr. 19, 2019) ...................................................................... 9

*Jaszczyszyn v. SunPower Corp.*,
  2024 WL 3463348 (N.D. Cal. July 17, 2024) .......................................................................... 7

*Kendall v. Odonate Therapeutics, Inc.*,
  2021 WL 3406271 (S.D. Cal. Aug. 4, 2021) ............................................................................ 3

*Kipling v. Flex Ltd.*,
  2020 WL 2793463 (N.D. Cal. May 29, 2020) .......................................................................... 2

*Lowe v. Tandem Diabetes Care Inc.*,
  2024 WL 1898473 (S.D. Cal. Apr. 30, 2024) .......................................................................... 2

*Nguyen v. Endologix, Inc.*,
  962 F.3d 405 (9th Cir. 2020) ................................................................................................... 6

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000) .................................................................................................... 7

*Petersen v. TriplePoint Venture Growth BDC Corp.*,
  2024 WL 5384678 (N.D. Cal. Aug. 7, 2024) ......................................................................... 10

*Plumbers & Steamfitters Loc. 60 Pension Tr. v. Meta Platforms, Inc.*,
  2024 WL 4251896 (N.D. Cal. Sept. 17, 2024) ...................................................................... 10

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014) .............................................................................................. 7, 8

*Prodanova v. H.C. Wainwright & Co., LLC*,
  993 F.3d 1097 (9th Cir. 2021) ......................................................................................... 6, 8, 9

*Smilovits v. First Solar Inc.*,
  119 F. Supp. 3d 978 (D. Ariz. 2015) ..................................................................................... 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ............................................................................................................ 9

*Uniformed Sanitationmen's Ass'n Comp. Accrual Fund v. Equinix, Inc.*,
  2025 WL 39936 (N.D. Cal. Jan. 6, 2025) ........................................................................... 9

*Welgus v. TriNet Grp., Inc.*,
  2017 WL 6466264 (N.D. Cal. Dec. 18, 2017) .................................................................... 9

*Wochos v. Tesla, Inc.*,
  985 F.3d 1180 (9th Cir. 2021) ............................................................................................ 4

## I.    INTRODUCTION

Plaintiff's Opposition does nothing to cure the fundamental pleading deficiencies in the Complaint highlighted in Defendants' Motion to Dismiss.  Indeed, it lays bare the lengths to which Plaintiff must stretch to try to demonstrate that the two statements he challenges were false. Plaintiff's reliance on former employees to allege a "pull-forward" and subsequent falloff in sales in California fails both because those "witnesses" are not alleged to have knowledge sufficient to speak to these issues and because Plaintiff's theory of fraud is irreconcilable with the reality that Enphase *met its financial guidance* for the quarter in which he claims Defendants concealed declining revenues.  Plaintiff's effort to twist Defendants' statements about financing options available to installers as contradicting the CEO's description of Enphase's installer base as "diverse" and his confidence in Enphase's ability to weather a high-interest rate environment also fails.  And Plaintiff fails to muster any plausible motive for Defendants to defraud investors in this single-quarter Class Period.  Instead, he falls back on generalized theories of access to information and core operations, but these do not support a strong inference of an intent to defraud, much less an inference of fraud that is at least as compelling as the nonfraudulent one.  And Plaintiff's only response to his failure to allege any actual corrective disclosure revealing the "truth" of the Challenged Statements is to argue that Enphase's forward-looking guidance updating investors on Enphase's projected future performance somehow corrected prior statements about projected performance based on earlier information.  Issuing new projections based on new information is not fraud.  The Complaint should be dismissed.

## II.    ARGUMENT

### A.    Plaintiff Fails to Plead Falsity for Either Challenged Statement

#### 1.    The Demand Pull-Forward Statement Was Not False or Misleading

Plaintiff's Opposition underscores that he has not alleged any particularized fact suggesting Mr. Kothandaraman's February 7, 2023 statement that Enphase had not seen "any pull forward right now" was false or misleading.  Mot. at 6-9.  All Plaintiff can offer are CWs who were not in a position to opine on "pull-forward" in the California market during the relevant period—and even if their accounts were credited, their descriptions are too vague, the timeline they ask the Court to

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

infer is nonsensical, and they are contradicted by the rest of the complaint.

To support his allegations that California's new NEM 3.0 program had caused a "pull-forward" in demand as of February 7, 2023, Plaintiff primarily relies on statements allegedly made by CW2 and CW3 that sales in California became "crappy" thirty to forty-five days "into NEM 3.0," and that NEM 3.0 "threw off" the California market to which Enphase dedicated 40% of its regional sales managers. Opp. at 7-10. But the Opposition does not explain why either CW would have been "in a position to have the knowledge they profess." *Kipling v. Flex Ltd.*, 2020 WL 2793463, at *16 (N.D. Cal. May 29, 2020). Indeed, it effectively concedes that neither CW2 nor CW3 dealt with sales in California, arguing instead that "these witnesses did not have to be" in California because California was a "major market." Opp. at 9. But low-level employees are not presumed to have knowledge outside of their roles. *Lowe v. Tandem Diabetes Care Inc.*, 2024 WL 1898473, at *6 (S.D. Cal. Apr. 30, 2024) ("As a 'territory manager' responsible for only one region in the United States, it is not clear how FE1 would have personal knowledge regarding sales in other regions or the general market conditions across the United States."). These CWs are no exception to that rule.

Even if the CWs had *some* knowledge about the California market, the Opposition—which merely repeats Plaintiff's allegations of the CWs' roles, Opp. at 9—sheds no further light on how a "technical sales consultant" (CW2), a role that covered just 0.4% of Enphase's business, or "inside sales representative" (CW3) would have been in a position to know the early, market-wide effects of NEM 3.0. And Plaintiff does not even try to argue that CW1's role gave him access to relevant information. *See* Mot at 7; Opp. at 9. Thus, Plaintiff comes nowhere close to satisfying his burden to allege with particularity why the CWs would have personal knowledge of what they claim. Mot. at 6-8; *Lowe*, 2024 WL 1898473, at *6; *In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *13 (N.D. Cal. July 21, 2020) (where complaint "narrowly defines [CW's] responsibilities," CW could not speak to "*overall* sales and customers" (cleaned up) (emphasis added)); *Applestein v. Medivation, Inc.*, 861 F. Supp. 2d 1030, 1037-38 (N.D. Cal. 2012) (plaintiff failed to "explain what a Senior Technology Engineer does and why someone in that position would have knowledge about the" clinical trial at issue). Plaintiff's cases (Opp. at 9) do not excuse these flaws; they underscore them.

*See Kendall v. Odonate Therapeutics, Inc.*, 2021 WL 3406271, at *7 (S.D. Cal. Aug. 4, 2021) (CW allegations only sufficient where plaintiff alleged "job title, tenure, supervisors, and responsibilities" demonstrating why CWs would have personal knowledge of facts they alleged); *In re Daou Sys., Inc.*, 411 F.3d 1006, 1016 (9th Cir. 2005) (requiring at minimum "job description and responsibilities" alleged with "a large degree of specificity"). In any event, the CWs offer only vague allegations, such as "crappy" sales and a "nontrivial percentage of earnings," which are insufficiently specific to undermine any Challenged Statement. Mot. at 7-8; *see Dolly v. GitLab Inc.*, 2025 WL 2372965, at *10 (N.D. Cal. Aug. 14, 2025) (rejecting "generic" CW accounts).

Further, Plaintiff's attempt to allege a timeline for a "pull-forward" in demand, Opp. at 7-9, is both internally inconsistent and "inconsistent with reality," falling far short of Plaintiff's pleading burden. *In re Palo Alto Networks, Inc. Sec. Litig.*, 2025 WL 1093247, at *5 (April 11, 2025) (rejecting allegation that CW had "never heard of a single sale" of product for which company reported $200 million in sales). Plaintiff attaches the NEM 3.0 policy to his Opposition to argue that because NEM 3.0 became "effective" on December 15, 2022—which is not disputed—CW2's claim that sales became "crappy" "30-45 days into NEM 3.0" must have meant between January 15 and January 31, 2023. Opp. at 7-8. But while NEM 3.0 was passed on December 15, 2022, the new rates did not go into effect until April 2023, allowing homeowners to apply for the prior, more favorable rates by that date and to connect their homes to the grid by April 2026. ¶ 8. This is irreconcilable with Plaintiff's desired inference that CW2 must have meant sales became "crappy" thirty to forty-five days after December 15, 2022. Plaintiff's speculation about a timeline that would render the pull-forward Challenged Statement false when made in February 2023 only reveals his failure to plead *particularized* facts supporting his theory of fraud.

Plaintiff's argument that the "pull-forward" in revenue must have ended around January 15, 2023—followed by "crappy" sales for the rest of the quarter, Opp. at 8—is also irreconcilable with the undisputed fact that *Enphase met its guidance for Q1*, which ended March 31, 2023. Mot. at 5. Indeed, Plaintiff claims both that Q1 results were "buoyed" by NEM 3.0, and that sales in Q1 were "crappy" and "fell off" for eleven weeks of a thirteen-week fiscal quarter, *months* before the NEM 3.0 legacy deadline, implying that the revenue generated in that two-week period alone allowed

Enphase to meet its previously projected earnings guidance. Opp. at 8-9. Plaintiff offers no support for this implausible inference. Nor does Plaintiff explain how Kothandaraman would have known of supposedly "crappy" sales when he made the Challenged Statement just one month into the quarter and at most two weeks after CW2's claimed timeline for the alleged sales slowdown.

## 2.    The Installer Base Statement Was Not False or Misleading

Plaintiff's Opposition also does not identify any particularized allegation that shows why Kothandaraman's statement that Enphase's installer base was "diverse" and that shifts in financing options "only ha[d] a minor impact to our business" because Enphase's "approach . . . does not change" was false when made. Mot. at 9-11. Plaintiff argues Enphase's installer base was not "diverse" because it "was heavily weighted toward long-tail installers" that did not offer leasing options. Opp. at 5. But that is not what Kothandaraman said. *See Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1193 (9th Cir. 2021) (Plaintiff cannot "rewrite" statement to show falsity). Kothandaraman said Enphase's installer base *as a whole* was diverse; he neither stated nor implied whether that diverse base was weighted toward long-tail installers, and Plaintiff alleges no fact suggesting Enphase did *not* work with a diverse range of installers. ¶¶ 86-87; *Dolly*, 2025 WL 2372965, at *10 (allegations that "[a]t most" suggested "certain customers" would "hesitate" to use touted features "d[o] not contradict [the] statements that the features were *generally available*"). Nor does the Complaint allege, or the Opposition advance, any fact that would suggest that installers "both small and large" do *not* offer "cash, loans, and PPA options to homeowners." Ex. 3 at 6.

Plaintiff also claims Kothandaraman "admitted" the falsity of the installer-base Challenged Statement when he said in April 2023 that "[l]eases to long-tail installers [hadn't] been ramped until now," because that supposedly meant long-tail installers who sold to homeowners obtaining loans for solar solutions were unprepared for the "high interest rate environment." Opp. at 4-5 (emphasis omitted). But in reality, Kothandaraman said the opposite. When asked about the "health of the customer base, specifically the long tail," Kothandaraman explained while "all installers" are affected by rising interest rates, the "data" indicated long-tail installers were faring *better* than others. Ex. 6 at 14-15 ("We found in our analysis, the sell-through rate of long-tail installers was quite better compared to the Tier 1 and 2 installers."). Indeed, far from undermining

the Challenged Statement, the April comments support its truth. By sharing insights from Enphase's "data" on installers of various sizes, Kothandaraman affirmed Enphase works with a "diverse" installer base. And his optimism about installer financing options and the "resilien[ce]" of the industry comports with his statement that interest rates only had a "minor impact" on Enphase and its "approach does not change." *Compare* Ex. 6 at 14-15 *with* ¶¶ 86-87.

Further, Plaintiff's Opposition still does not identify any fact suggesting that, as of February 7, Enphase had experienced anything more than a "negligible" impact to its business from global interest rates. Mot. at 10-11. Indeed, Plaintiff effectively concedes there had been no impact at that time, claiming instead the impact was shown in Enphase's "weak" forward-looking Q3 guidance, issued in April 2023. Opp. at 5-6. That is, according to Plaintiff, Enphase's statement in February that it had seen a "negligible" impact from interest rates was false when made because, two months later, Enphase *predicted* interest rates *might* have an impact *in the future*. That is the opposite of pleading contemporaneous falsity. *See In re Foundry Networks, Inc.*, 2003 WL 23211577, at *8 (N.D. Cal. Feb. 14, 2003) (rejecting argument that go-forward guidance showed statement in prior quarter about growth was false where plaintiffs did not allege "relationship between" forecast and past results). Moreover, to the extent the February statement implicated future quarters, as Plaintiff argues, it is protected as forward-looking. *See* Mot. at 11 n.2; *Dolly*, 2025 WL 2372965, at *6-7. And contrary to Plaintiff's assertion, Opp. at 6-7, the statement was accompanied by meaningful cautionary language. Investors were cautioned to review the risk factors in Enphase's SEC filings—the content of which Plaintiff does not address, *see id.*—which warned that Enphase's success depended on "levels of investment by end-users of solar energy products, which tend to decrease when economic growth slows" and on "the ability of prospective system owners to obtain long-term financing for solar PV installations . . . on acceptable terms or at all." Ex. 4 at 16, 22; *see id.* at 37; Ex. 5 at 51; Ex. 3 at 4. Enphase's annual report for 2022 further disclosed that "increased interest rates . . . have caused and may continue to cause various negative effects." Ex. 2 at 18; *see also id.* at 4, 15, 19, 36, 50.

Finally, this Challenged Statement is also nonactionable corporate optimism because terms like "diverse," "minor," and "negligible" are not capable of objective verification. Mot. at 11.

Plaintiff claims that "context" makes these terms actionable. Opp. at 5-6. But the statement was part of Kothandaraman's opening remarks about his optimism for the following quarter, *see* Ex. 3 at 6, not "made in response to specific questions asked by financial analysts." *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 771 (9th Cir. 2023) (Opp. at 6). Nor did Kothandaraman go "beyond mere optimism by providing a concrete description" of the installer base and effects on financing shifts. *Id.* at 770 (cleaned up). Rather, Kothandaraman offered a "mildly optimistic, subjective assessment" that falls squarely within the kind of "vague statements of optimism" that investors devalue. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (2010).

### B.    Plaintiff Fails to Plead a Strong Inference of Scienter

#### 1.    Plaintiff Fails to Allege Any Motive

Plaintiff concedes that he has not alleged any motive or reason for any Defendant to defraud investors. Opp. at 13. Indeed, despite ample chances, Plaintiff cannot explain why Defendants would have misled investors about the impact of interest rates and NEM 3.0 only to reveal the "truth" two months later, and without any attempt to benefit from the so-called "fraud." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020). But while Plaintiff tries to spin motive as merely one way to plead scienter, the absence of a plausible motive to defraud makes it "much less likely" that Defendants had the requisite intent. *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021). None of Plaintiff's other theories cures this fatal flaw.

#### 2.    Plaintiff Does Not Adequately Allege Fraudulent Intent

To "overlook the failure to allege a plausible motive," Plaintiff must allege "compelling and particularized facts showing fraudulent intent," a high burden. *Id*. He falls far short. Mot. at 12-14.

**No "Admission" of Falsity**. Plaintiff again claims Kothandaraman's April 2023 statement that leases to long-tail installers had not been "ramped up until now" was an "admission" that Enphase's installer base was not "diverse," somehow supporting an inference of scienter. Opp. at 10-11. But what Plaintiff claims to be an admission of falsity actually confirmed the challenged statement's truth. *See supra* § II.A.2. Kothandaraman highlighted Enphase's products are sold by a variety of installers, explained the "data" showed long-tail installers were doing *better* than other types of installers, and ultimately expressed optimism at the industry's "resilen[ce]." Ex. 6

at 14-15. This supports that Enphase's installer base was "diverse" and that financing changes did not have material impacts on business. *See Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 588-89 (S.D.N.Y. 2011) ("consistency" between actions and statements undermines scienter). In contrast, in *Novak v. Kasaks*, 216 F.3d 300, 311, 313 (2d Cir. 2000) (Opp. at 10), defendants allegedly discussed inventory issues internally while reassuring investors inventory was "under control," but later "admitted to analysts that its inventories were too high." Nothing like that is pled here.

**Core Operations.** Plaintiff also attempts to rely on the catch-all "core operations" theory of scienter, to no avail. Under any formulation of the theory, *see* Opp. at 11, Mot. at 13-14, Plaintiff's Opposition effectively concedes that neither NEM 3.0, nor the California market, nor leasing options for end-users constitute Enphase's "core operations."

*First*, Plaintiff does not claim the California market or the financing habits of customers and installers constitutes Enphase's core operations. Opp. at 11. As Plaintiff agrees, the California market accounts for just 20% of Enphase's business, ¶ 32, and thus cannot be deemed core to Enphase. *Jaszczyszyn v. SunPower Corp.*, 2024 WL 3463348, at *12-13 (N.D. Cal. July 17, 2024) (rejecting core operations theory where component generated 23% of revenue). Kothandaraman monitoring the California market does not make it a core operation, either. *See* Opp. at 11-13; *In re AnaptysBio, Inc.*, 2021 WL 4267413, at *14 (S.D. Cal. Sept. 20, 2021) (highlighting a metric does not satisfy core operations). While Plaintiff claims the "U.S. residential microinverter business" is core to Enphase, Opp. at 11, he has not alleged the "rare circumstance[s]" in which it would be absurd for this supposed core operation to mean Defendants had knowledge of some specific fact undermining the Challenged Statements. *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014). Here, Plaintiff offers no allegations that it would be "absurd" to conclude Enphase lacked granular knowledge of how individual homeowners—two levels removed from Enphase's direct customers—might finance solar installations as the macroeconomic environment changed in real time. *See In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 1013 (N.D. Cal. 2017) (rejecting core operations without allegation that defendants "had any knowledge" of challenged conduct).

*Second*, Plaintiff claims that core operations can be shown by Kothandaraman's "role" at

Enphase "with other allegations" or his purported "access" to undefined information.  Opp. at 11. But these allegations do not salvage his theory.  Plaintiff neither explains why Kothandaraman's role supports the necessary strong inference nor alleges that Kothandaraman had "actual access" to any specific information that would have undermined the Challenged Statements when made.  *Id.*; *see Prodanova*, 993 F.3d at 1109 (rejecting scienter allegations based on roles at company without specific information they learned to undermine challenged statement).

At most, Plaintiff claims Kothandaraman addressed analyst reports about NEM 3.0, Opp. at 12, but "it does not demonstrate scienter to point out that analysts" discussed a topic.  *Bolling v. Dendreon Corp.*, 2014 WL 2533323, at *14 (W.D. Wash. June 5, 2014); *see also Curry v. Yelp Inc.*, 2015 WL 1849037, at *12 (N.D. Cal. Apr. 21, 2015) (rejecting application of core operations theory even where Defendants "acknowledged publicly" that they "were aware of . . . the existence of allegations" about a topic).  The same is true for Plaintiff's claim that Defendants were in "close contact" with the installer network.  Opp. at 12.  Plaintiff does not explain what Defendants learned from this "contact," when, or how it undermined the Challenged Statements.  *See Intuitive*, 759 F.3d at 1062-63 (rejecting core operations theory where "[m]issing are allegations linking specific reports and their contents to the executives" and undermining challenged statements).

**Monitoring Market Changes.**  Plaintiff also claims scienter is shown from Defendants "monitoring" the market, including the NEM 3.0 transition and global interest rates.  Opp. at 12-13.  But merely monitoring market developments is insufficient.  *See In re Fastly, Inc. Sec. Litig.*, 2021 WL 5494249, at *17 (N.D. Cal. Nov. 23, 2021) ("statement that [a senior officer] would 'continue to monitor the [] situation' is insufficient to raise a strong inference of scienter"); Mot. at 12-13.  Plaintiff identifies no particularized data point Defendants could have "monitored" that would have undermined either Challenged Statement as of February 7, 2023.  *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1175 (C.D. Cal. 2007) ("Plaintiffs have not alleged any specific data that the individual Defendants learned from these reports that were inconsistent with [the] public statements.").  Indeed, Plaintiff's cases (Opp. at 13) show the specificity of contradictory information available to be "monitored" necessary to infer scienter, which is lacking here.  *See, e.g.*, *E. Ohman J:or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918, 939-40 (9th Cir. 2023) (scienter

only pled for defendant repeatedly showing "familiar[ity] with specific revenue numbers" and witness accounts of defendant's knowledge of specific facts about misstatements); *Uniformed Sanitationmen's Ass'n Comp. Accrual Fund v. Equinix, Inc.*, 2025 WL 39936, at *5 (N.D. Cal. Jan. 6, 2025) (scienter pled only where plaintiffs alleged core operation and specific statements from defendants about access to particularized information related to challenged statements); *In re Zillow Grp., Inc. Sec. Litig.*, 2019 WL 1755293 (W.D. Wash. Apr. 19, 2019) (rejecting scienter allegations based on defendants' review of information in preparation for earnings calls as insufficient).

**Temporal Proximity.** Plaintiff argues that the short time period, a single quarter, between the Challenged Statements and the purported corrective disclosures supports scienter. Opp. at 13. But courts routinely hold a plaintiff alleging a short Class Period does not "establish a strong inference of scienter or even contribute strongly to such an inference." *Welgus v. TriNet Grp., Inc.*, 2017 WL 6466264, at *20 (N.D. Cal. Dec. 18, 2017), *aff'd*, 765 F. App'x 239 (9th Cir. 2019); *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 622 (9th Cir. 2017) (temporal proximity does not "contribute[] strongly" to scienter). Plaintiff's lone citation is distinguishable as it involved actions by defendants irreconcilable with statements made just days before. *In re Apple Inc. Sec. Litig.*, 2020 WL 6482014, at *11 (N.D. Cal. Nov. 4, 2020) (finding scienter where "Apple cut production lines for the iPhone XR four days after Cook made optimistic statements"). In fact, temporal proximity here supports a nonfraudulent inference. *City of Hollywood Firefighters Pension Fund v. Atlassian Corp.*, 2024 WL 235183, at *16 (N.D. Cal. Jan. 22, 2024) (more plausible inference was company sought "to provide open and regular communication . . . during uncertain economic times"). Defendants had no plausible reason to lie to the market when the supposed "truth" would be revealed only two months later.

### 3.    The Nonfraudulent Inference Is More Compelling

Indeed, the nonfraudulent inference greatly outweighs Plaintiff's hodgepodge allegations. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007); Mot. at 14. The Opposition does not explain why Defendants would misreport installer base diversity, interest rate impact, or a supposed demand pull-forward, only to correct those statements just two months later without any attempt to profit from the purported "fraud." *Prodanova*, 993 F.3d at 1107 (no scienter where

defendant "would stand to lose more from its allegedly fraudulent actions than it would gain"). The far more cogent and compelling inference is that the Challenged Statements accurately reflected what Defendants believed about NEM 3.0 and the effect of interest rates at the time the statements were made, and that Defendants continued to update the market about developments in its business and the broader solar industry as information became available. *Atlassian*, 2024 WL 235183, at *16; Mot. at 14.

### C.    Plaintiff Does Not Adequately Allege Loss Causation

Plaintiff also fails to plead loss causation because the April 25, 2023 earnings call did not reveal previously concealed information. Opp. at 15 & n.9; Mot. at 14-15. Enphase's warning of future headwinds is not "a viable corrective disclosure" as "[i]t strains credulity to reverse engineer this forward-looking observation into a retrospective analysis." *Plumbers & Steamfitters Loc. 60 Pension Tr. v. Meta Platforms, Inc.*, 2024 WL 4251896, at *11 (N.D. Cal. Sept. 17, 2024); *Dolly*, 2025 WL 2372965, at *3, 15 ("lower-than-expected guidance" that "said nothing to suggest improprieties" about "prior statements, much less . . . reveal a fraud" insufficient). Plaintiff's cases (Opp. at 15) miss the mark because the corrective disclosures there involved backward-looking information. *Smilovits v. First Solar Inc.*, 119 F. Supp. 3d 978, 998 (D. Ariz. 2015) (company revised guidance conceding need to "recalibrate" its business); *Baker v. SeaWorld Entm't, Inc.*, 423 F. Supp. 3d 878, 903 (S.D. Cal. 2019) (company missed prior guidance and decreased forward-looking guidance as "one or more negative impacts were not temporary"). In contrast, Enphase's forward-looking guidance in April 2023 did not concern February 2023, but instead explained *future* anticipated impacts from macroeconomic headwinds and NEM 3.0. *See generally* Ex. 6.

Finally, Plaintiff invokes the materialization of the risk theory, but Defendants did not "downplay[]" any risk. Opp. at 15. Rather, Enphase consistently warned investors about the potential impacts of NEM 3.0 and interest rates. Mot. at 15; *Petersen v. TriplePoint Venture Growth BDC Corp.*, 2024 WL 5384678, at *13 (N.D. Cal. Aug. 7, 2024) (explaining "Defendants did not conceal any risks" when they warned of volatility and risk in their loan investments).

### III.    CONCLUSION

Plaintiff's Amended Complaint should be dismissed with prejudice.

DATED: September 15, 2025

**LATHAM & WATKINS LLP**

*/s/ Colleen C. Smith*
Colleen C. Smith (Bar No. 231216)
Katherine E. Bruce (Bar No. 361220)
Anastasia Pyrinis (Bar No. 352395)
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-5400
Email: colleen.smith@lw.com
Email: kathy.bruce@lw.com
Email: anastasia.pyrinis@lw.com

Daniel R. Gherardi (Bar No. 317771)
140 Scott Drive
Menlo Park, California 94025
Telephone: (650) 328-4600
Email: daniel.gherardi@lw.com

Thomas J. Giblin (*pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: thomas.giblin@lw.com

*Attorneys for Defendants Enphase Energy, Inc.
and Badrinarayanan Kothandaraman*